IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, BIG BEAT RECORDS, INC., CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., INTERSCOPE RECORDS, LAFACE RECORDS LLC, MOTOWN RECORD COMPANY, L.P., PRIORITY RECORDS, LLC, RHINO ENTERTAINMENT COMPANY, SIRE RECORDS COMPANY (d/b/a of WBR/SIRE VENTURES INC.), SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., VIRGIN RECORDS AMERICA, INC., WARNER BROS. RECORDS INC., and ZOMBA RECORDING LLC.,<br><br>  Plaintiffs,<br><br>v.<br><br>TIME WARNER, INC., WARNER BROS. ENTERTAINMENT, INC., WARNER BROS. DOMESTIC TELEVISION DISTRIBUTION, WARNER BROS. TELEVISION, TELEPICTURES PRODUCTIONS, INC., WAD PRODUCTIONS, INC. (d/b/a "THE ELLEN DeGENERES SHOW"), and A VERY GOOD PRODUCTION,<br><br>  Defendants. | Case No._____<br><br>JURY DEMAND |

## COMPLAINT

Plaintiffs Arista Music, Arista Records LLC, Atlantic Recording Corporation, Big Beat Records, Inc., Capitol Records, LLC, Elektra Entertainment Group Inc., Interscope Records, LaFace Records LLC, Motown Record Company, L.P., Priority Records, LLC, Rhino Entertainment Company, Sire Records Company (d/b/a WBR/Sire Ventures Inc.), Sony Music Entertainment, UMG Recordings, Inc., Virgin Records America, Inc., Warner Bros. Records Inc. and Zomba Recording LLC (collectively "Plaintiffs") aver:

1

1.      This is an action for direct, contributory and vicarious copyright infringement arising out of the Defendants' willful conduct. Plaintiffs are the world's leading record companies and own the rights to thousands of sound recordings, including many of the most well-known and valuable sound recordings in the world. Plaintiffs incur tremendous expense in connection with the creation and acquisition of such creative works and recoup their investment through the sale and licensing of such works. The manufacturing, sale and distribution of recorded music are an important part of the Nashville community, affecting not just record companies, but other businesses as well.

2.      Defendants create, produce, distribute and/or broadcast a daily television show called *The Ellen DeGeneres Show* (the "Show"). In connection therewith, Defendants have used without Plaintiffs' permission well over one thousand sound recordings owned or controlled by Plaintiffs. Defendants used these recordings (which included many of Plaintiffs' most valuable copyrighted works) in a number of different segments on the Show, such as during the immensely popular dance sequence following the opening monologue.

3.      Despite knowing that separate licenses were required to exploit both the underlying musical compositions and the sound recordings, Defendants made no effort to obtain the necessary rights related to the sound recordings. Instead of acquiring licenses for the use of the sound recordings, Defendants made the conscious decision not to seek such licenses. Incredibly, when Plaintiffs' representatives asked Defendants' representatives why the Defendants had failed to obtain sound recording licenses, Defendants responded that they "did not roll that way." As sophisticated consumers of music, Defendants knew full well that, regardless of the way they rolled, under the Copyright Act, and under state law for the pre-1972 recordings, they needed a license to use the sound recordings lawfully.

## JURISDICTION AND VENUE

4. This is a civil action seeking damages for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §101 *et seq.*, and under state law.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1338 and 1367.

6. This Court has personal jurisdiction over Defendants, which do business in this judicial district and which transmit, distribute, broadcast and/or authorize the broadcast of the Show in this state.

7. Plaintiffs are doing business in this judicial district.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). This District is a major music recording and production center, and the recording industry has a sizable impact on the economy in this District. Plaintiffs have suffered harm in this District. Also, acts or omissions giving rise to this matter occurred in Nashville because Defendants failed to obtain licenses to exploit pertinent sound recordings from Plaintiffs doing business here. Additionally, the Show states on its website that it is broadcast at least five times per week on WTVF, the CBS affiliate in this District. Defendants authorized such broadcasts, have benefitted from such broadcasts, and promote such broadcasts by, for instance, including a link on the Show website to WTVF.

## THE PARTIES

9. Plaintiff Arista Music is a New York general partnership f/k/a BMG Music.

10. Plaintiff Arista Records LLC is a limited liability company duly organized and existing under the laws of Delaware.

11. Plaintiff Atlantic Recording Corporation is a corporation duly organized and existing under the laws of Delaware.

12. Plaintiff Big Beat Records, Inc. is a corporation duly organized and existing under the laws of Delaware.

13. Plaintiff Capitol Records, LLC is a limited liability company duly organized and existing under the laws of Delaware and doing business at 3322 West End Avenue, #1100, Nashville, Tennessee 37203.

14. Plaintiff Elektra Entertainment Group Inc. is a corporation duly organized and existing under the laws of Delaware.

15. Plaintiff Interscope Records is a California general partnership.

16. Plaintiff LaFace Records LLC is a limited liability company duly organized and existing under the laws of Delaware.

17. Plaintiff Motown Record Company, L.P., is a California limited partnership.

18. Plaintiff Priority Records, LLC is a limited liability company duly organized and existing under the laws of Delaware.

19. Plaintiff Rhino Entertainment Company is a corporation duly organized and existing under the laws of Delaware.

20. Plaintiff Sire Records Company, d/b/a of WBR/Sire Ventures Inc., is a corporation duly organized and existing under the laws of Delaware and is a wholly owned subsidiary of Warner Bros. Records Inc.

21. Plaintiff Sony Music Entertainment is a Delaware partnership.

22. Plaintiff UMG Recordings, Inc. is a corporation duly organized and existing under the laws of Delaware and doing business at 401 Commerce Street, Nashville, Tennessee 37219.

23. Plaintiff Virgin Records America, Inc. is a corporation duly organized and existing under the laws California.

24. Plaintiff Warner Bros. Records Inc. is a corporation duly organized and existing under the laws of Delaware.

25. Plaintiff Zomba Recording LLC is a limited liability company duly organized and existing under the laws of Delaware.

26. Plaintiffs are engaged in the business of producing sound recordings and manufacturing, distributing, selling and/or licensing the distribution and sale of their sound recordings in phonorecords (as defined in 17 U.S.C. § 101) in the United States. Plaintiffs invest substantial sums of money, as well as time, effort, and creative talent, to discover and develop recording artists, and to create, manufacture, advertise, promote, sell and license phonorecords embodying the performances of their exclusive recording artists, many of who live and/or work in this District.

27. Plaintiffs are the copyright owners of, or the owners of exclusive rights in, thousands of sound recordings, including many of the most popular and well-known sound recordings in the world, including but not limited to the sound recordings listed in Exhibit A, for which Plaintiffs have copyrights protected by the Copyright Act, and in Exhibit B, in which Plaintiffs own certain rights protected by state law. Plaintiffs have the exclusive rights, among other things, to reproduce the sound recordings in copies or phonorecords and audiovisual recordings or broadcasts; to prepare derivative works based upon the sound recordings; to distribute copies or phonorecords of the sound recordings to the public; and to perform or broadcast the sound recordings publicly by means of a digital audio transmission.

28. Defendant Time Warner Inc. is a Delaware corporation with its principal place of business in New York. Time Warner Inc. is the world's third largest media and entertainment conglomerate. Time Warner Inc. creates, produces, distributes, licenses and markets the Show throughout the United States, and has registered its name with the Tennessee Secretary of State.

29. Defendant Warner Bros. Entertainment, Inc. is a Delaware corporation, and a wholly owned subsidiary of Time Warner, Inc.. Warner Bros. Entertainment, Inc. is a broad-based entertainment company that creates, produces, distributes, licenses and markets the Show across all current and emerging media and platforms.

30. Defendant Warner Bros. Domestic Television Distribution is a Delaware corporation, a wholly owned subsidiary of Time Warner Inc. Warner Bros. Domestic Television Distribution distributes the Show to the domestic television marketplace.

31. Defendant Warner Bros. Television is an unincorporated television production and distribution association of Warner Bros. Entertainment Inc., a wholly owned subsidiary of Time Warner Inc. Warner Bros. Television oversees the production and distribution of the Show.

32. Defendant Telepictures Productions, Inc. is a Delaware corporation. Telepictures Productions, Inc. produces the Show.

33. Defendant WAD Productions, Inc. (d/b/a "The Ellen DeGeneres Show") is a Delaware corporation. WAD Productions, Inc. produces the Show.

34. Defendant A Very Good Production is an unincorporated association that co-produces the Show.

35. Plaintiffs are informed and believe and on that basis allege that at all times mentioned in this complaint, each of the Defendants was the agent of the other Defendants and,

in doing the things alleged in this complaint, was acting within the course and scope of such agency.

## FACTS

36. Plaintiffs are the world's leading record companies and own the rights to thousands of sound recordings, including many of the most well-known and valuable sound recordings in the world.

37. The Show is a syndicated daytime television talk show hosted by comedienne Ellen DeGeneres. The Show is one of the highest-viewed daytime shows, averaging approximately three million viewers per episode. The Show has won numerous Daytime Emmy Awards, including Emmys for Best Talk Show and Talk Show Host.

38. From the Show's inception, sound recordings owned by the Plaintiffs have been incorporated into the Show without Plaintiffs' permission. Specifically, Defendants used more than one thousand sound recordings that are owned by one or more of the Plaintiffs, including recordings by virtually every major current artist of popular music, numerous Grammy and other award-winning recordings, and classic recordings that have stood the test of time. Defendants routinely used the most popular and desirable sound recordings, which included many sound recordings that the Plaintiffs do not license for daytime television at any price. The Show often uses the same sound recordings in multiple episodes and multiple seasons.

39. Plaintiffs' sound recordings are integral to the production of the Show. They are fundamental to both the structure and the success of the Show. For example, the recordings routinely accompany and facilitate the "dance over" segment that has been a fixed and essential element of the Show. During this segment (which occurs after the opening monologue), Ms. DeGeneres engages in an extensive routine where she dances from the stage to the interview area

(often through the audience). The "dance over" segment, and the popular sound recordings that form a crucial part of it, are considered signature elements of the Show. Indeed, in 2006, Defendants' efforts to shorten the "dance over" segment were met with thousands of objections from fans. As a result, within a matter of days, the full "dance over" segment, utilizing popular sound recordings owned by Plaintiffs, returned. Additionally, unlike most other talk shows, the Show uses a disc jockey to play the sound recordings that are featured during the show.

40.     Ms. DeGeneres has acknowledged the close relationship between the use of popular sound recordings and the success of the Show. In an interview in 2005, Ms. DeGeneres stated that her intent "from the beginning" was to make music a featured aspect of the Show and that playing a variety of music would attract more viewers:

> Q:    Music is an integral part of your TV show. Was it a conscious decision, from the start, to incorporate music and artists?
>
> A:    I always wanted a DJ from the beginning. And I thought the more types of music we played, the more types of viewers we'd get.

Defendants also tout the significance of the Show's use of the sound recordings on the official website http://ellen.warnerbros.com/.

41.     Defendants' unlawful use of sound recordings extends beyond the taping and copying of the Show for syndication. For example, clips from the program featuring the sound recordings appear on the Show's official website. Such clips continued to be available on the website even after the Plaintiffs notified Defendants of Defendants' unlawful use of the sound recordings.

42.     Defendants' unauthorized use of the Plaintiffs' sound recordings in the Show constitutes infringement of Plaintiffs' exclusive rights and that infringement has been willful.

Defendants are sophisticated media companies with full knowledge of the existence and import of the copyright laws. Indeed, many of the Defendants frequently bring legal actions to enforce their own copyrights. Also, Defendants have full knowledge of the need to get licenses; many of the Defendants routinely seek and obtain sound recording licenses for their other television shows and movies. Finally, Defendants sought and obtained licenses for the compositions embodied in the sound recordings but decided that they would not get sound recording licenses because "they did not roll that way." They did this despite acknowledging the legal obligation to obtain licenses for use of the sound recordings. In fact, in a 2006 interview, Tony Okungbowa, the DJ who played the sound recordings for the first three seasons of the Show and who returned as DJ for the most recent season, stated that music had to be chosen ahead of time because "[t]here's clearance issues."

## COUNT I

## COPYRIGHT INFRINGEMENT

43.   Plaintiffs own the copyrights in the sound recordings listed in Exhibit A. Exhibit A is not an exhaustive list of the copyrighted sound recordings that Defendants infringed. Plaintiffs intend to add additional sound recordings to Exhibit A and expressly reserve the right to do so.

44.   Plaintiffs have registered the copyrights to the sound recordings listed in Exhibit A with the Library of Congress prior to commencement of this action.

45.   Without permission, Defendants have duplicated, distributed and broadcast the sound recordings, or portions thereof, reflected in Exhibit A. Additionally, upon information and belief, Plaintiffs believe Defendants have duplicated, distributed, and broadcast additional sound recordings without Plaintiffs' permission, and Plaintiffs reserve the right to amend the Complaint

to add additional claims under the Copyright Act.

46. Defendants have infringed Plaintiffs' exclusive rights to the sound recordings.

47. Alternatively, Defendants have materially contributed to and induced the unlawful use of Plaintiffs' sound recordings, or have failed to exercise their respective rights and abilities to control the conduct of those responsible for the infringement, thereby deriving a financial benefit from the infringement.

48. Defendants' conduct was intentional and willful and undertaken with a complete disregard of Plaintiffs' rights. Plaintiffs are entitled to statutory damages under the Copyright Act or, alternatively, compensatory damages. Plaintiffs are also entitled to their attorney's fees.

## COUNT II

### COMMON LAW INFRINGEMENT OF PLAINTIFFS' RIGHTS IN OTHER SOUND RECORDINGS

49. Plaintiffs own the intangible rights in the sound recordings which are set forth in Exhibit B. Exhibit B is not an exhaustive list of the sound recordings (which are protected by common law) that Defendants infringed. Plaintiffs intend to add additional sound recordings to Exhibit B and expressly reserve the right to do so.

50. Without authorization, Defendants have duplicated and transmitted the sound recordings listed in Exhibit B. Additionally, upon information and belief, Plaintiffs believe Defendants have duplicated, distributed and broadcast additional sound recordings without Plaintiffs' permission, and Plaintiffs reserve the right to amend the Complaint to add additional claims under the state law.

51. Defendants' duplication of the sound recordings constitutes a violation of the Tennessee Consumer Protection Act, including Tenn. Code Ann. § 47-18-104(b)(2), (5), and

(27), unjust enrichment, conversion, unfair competition, and a violation of Tenn. Code Ann. § 39-14-115(a)(2)(A)-(C) and § 39-14-139.

52.   Plaintiffs seek all damages resulting from the unauthorized activities and exploitations by the Defendants, including actual damages, compensatory damages, incidental damages, treble damages pursuant to Tenn. Code Ann. § 47-18-109(a), punitive damages, and attorneys' fees.

WHEREFORE, Plaintiffs demand the following relief:

1.   Statutory damages or, in the alternative, compensatory damages for all infringements by Defendants of Plaintiffs' sound recording copyrights;

2.   For Defendants' violations and infringements at common law and pursuant to the Tennessee Consumer Protection Act and Tenn. Code Ann. § 39-14-139, compensatory, punitive and treble damages;

3.   Prejudgment interest;

4.   Plaintiffs' costs, including their attorneys' fees; and

5.   Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues triable to a jury.

RESPECTFULLY SUBMITTED,

Timothy L. Warnock (BPR #12844)
Tim Harvey (BRP #21509)
Riley, Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
twarnock@rwjplc.com
tharvey@rwjplc.com
Ph.:  615-320-3700